## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2022-0009** |
| | ) | |
| **MAXWELL BRYAN and ELVIN BLOICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**Attorneys:**
**Evan Rikhye, Esq.**
**Daniel H. Huston, Esq.**
St. Croix, U.S.V.I.
 *For the United States*

**Gabriel J. Villegas, Esq.**
**Lisa L. Brown Williams, Esq.**
St. Croix, U.S.V.I.
 *For Defendant Maxwell Bryan*

**Juan F. Matos de Juan, Esq.**
San Juan, Puerto Rico
 *For Defendant Elvin Bloice*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

  THIS MATTER comes before the Court on Defendant Maxwell Bryan's ("Bryan") "Motion for Mistrial" (Dkt. No. 359); Defendant Elvin Bloice's ("Bloice") "Motion for Declaration of a Mistrial" (Dkt. No. 364) (collectively, "Motions" or "Motions for Mistrial"); Defendant Bryan's "Motion for Joinder" (Dkt. No. 367); and the Government's "Opposition to Motions for Mistrial" (Dkt. No. 369). Defendant Bloice and Defendant Bryan's (collectively, "Defendants") Motions seek the declaration of a mistrial due to alleged juror bias and alleged prosecutorial misconduct stemming from the Government's failure to timely disclose the facts underlying Defendants' allegation of juror bias. Specifically, Defendants' Motions concern a juror

who disclosed at *voir dire* that he, as a process server, had a professional relationship with the United States Attorney's Office ("USAO"). However, during *voir dire*, the Juror was not asked and did not disclose that he had communications with the USAO on the Friday prior to jury selection regarding the Juror potentially serving process at the behest of the USAO in an unrelated civil matter.

For the reasons that follow, the Court will grant Defendant Bryan's Motion for Joinder and deny Defendants' Motions for Mistrial.

## I.    BACKGROUND

Following retrial of this matter,[1] which began on April 15, 2024 and ended on April 24, 2024, the jury returned a verdict finding Defendant Maxwell Bryan guilty of the lesser included offense in Count I (Deprivation of Rights Under Color of Law Without Bodily Injury) and of Count II (Falsification of Records in a Federal Investigation). The jury also found Defendant Bloice guilty of the previously identified lesser included offense in Count I, as well as of Count III (Falsification of Records in a Federal Investigation) and Count V (Material False Statements). (Dkt. Nos. 337, 338).

During *voir dire* for the retrial, the "Juror disclosed his business relationship with the USAO in his capacity as a process server." (Dkt. No. 358 at 1 n.1). The Juror repeatedly disclosed that he had a professional relationship with the USAO, and specifically that he had a professional relationship with Ms. Budhoo-Torres, who was a paralegal on the Government's trial team for this

---

[1] The Court previously declared a mistrial "based on manifest necessity" following a jury trial in this matter from September 18, 2023 to October 2, 2023, where "the jury was unable to reach a verdict[.]" (Dkt. No. 222 at 2).

2

matter. Relevant excerpts of the transcript from jury selection document the Juror's disclosures of this professional relationship:

> THE COURT: Good morning, sir. And whom do you know, please?[2]

> [THE JUROR]: Ms. Alleyne is my [relative]. I also know Ms. Budhoo-Torres, and I do have a professional relationship with the U.S. Attorney's Office as a process server.

> THE COURT: Okay. So you know Ms. Budhoo-Torres?

> [THE JUROR]: Yes.

> THE COURT: And you know?

> [THE JUROR]: Ms. Alleyne.

> THE COURT: . . . And you have a professional relationship. Tell me about your relationship with Ms. Budhoo-Torres and Ms. Alleyne. Is that a social, personal relationship?

> [THE JUROR]: With Ms. Alleyne, yes. Ms. Torres, I know her through the U.S. Attorney's Office. Like I said, I serve some documents for the U.S. Attorney's Office and I was contracted by Ms. Budhoo-Torres.

> . . .

> THE COURT: What about your professional relationship with the U.S. Attorney's Office you said as a process server?

> [THE JUROR]: Yes.

> THE COURT: Anything about that relationship; and you said [Ms. Budhoo-Torres], you contract with her for the process serving responsibilities, is that correct?

> [THE JUROR]: Yes.

> THE COURT: So you do process serving for the United States Attorney's Office . . .

> [THE JUROR]: I have, but not on a regular basis.

---

[2] The professional relationship was disclosed by the Juror in response to the following *voir dire* question: "Are you a relative, by blood or marriage, a close friend or a business acquaintance of anyone who has been introduced at the Government's table, or any other employee or business associate of the United States Attorney's Office? If so, please raise your card." (Dkt. No. 362 at 11).

THE COURT: Okay. And that's a professional relationship that we are talking about, is that correct?

[THE JUROR]: Yes.

THE COURT: Is there anything about that relationship that would prevent you from being fair and impartial to both sides in the case?

[THE JUROR]: No.

THE COURT: Or that would prevent you from following the law as I instruct?

[THE JUROR]: No.

(Dkt. No. 362 at 20-23). When called the next day for questioning at sidebar, the Juror raised concerns about serving on the jury due to the anticipated length of the proceeding.[3] The Juror also mentioned that he had a personal and professional relationship with Defendant Maxwell Bryan.

THE COURT: Good morning. You indicated you had a concern about the length of the trial?

[THE JUROR]: Yes, being self-employed.

THE COURT: You have a business, yes?

[THE JUROR]: Yes.

THE COURT: Tell us about that.

[THE JUROR]: I'm the owner of [Company]. I provide process serving, investigative work and courier service.

. . .

[THE JUROR]: . . . The length of the case is the issue. If it was, like, maybe a two-day, maybe a three-day case, I could probably do it.

. . .

---

[3] The Juror raised his card on the first day of *voir dire* in response to the Court's question: "This trial is estimated to last approximately eight to nine days, including the jury selection process. Is there any member of the panel for whom it would be a compelling hardship to serve on the jury given the length of the trial? If so, please raise your card."

[THE JUROR]: Something else. . . . The defendant, Maxwell Bryan, I know him professionally and personally. . .

. . .

THE COURT: . . . Is there anything about your relationship with Mr. Bryan that would prevent you from being fair and impartial to both sides?

[THE JUROR]: No.

 (Dkt. No. 363 at 33-34). Counsel for the Government and counsel for Defendants were then given an opportunity to question the Juror at sidebar, but declined to do so:

THE COURT: Counsel?

MR RIKHYE: No questions.

MR. VILLEGAS: No questions.

MR. MATOS DE JUAN: I'm good.

(Dkt. No. 363 at 35). Aware from *voir dire* of the Juror's personal and professional relationship with Defendant Bryan, his personal relationship with Ms. Alleyne of the USAO, and his professional relationship with Ms. Budhoo-Torres and the USAO as a process server, neither the Government nor Defendants inquired further, moved to strike the juror for cause, or used a preemptory challenge on the Juror. The Juror was subsequently selected for the Jury.

On May 14, 2024, the Government publicly filed a "Notice to the Court and the Parties and Request for a Post-Trial Status Conference" ("Notice"), in which the Government advised that "a St. Thomas-based paralegal in the Civil Division" of the United States Attorney's Office ("USAO") had communicated with the Juror about potentially serving three subpoenas for the USAO in a civil matter. (Dkt. No. 346).[4] The referenced communication is an April 12, 2024 email

---

[4] The Government represented at a post-trial conference held on May 31, 2024 that prior to disclosing the April 12, 2024 communications, the USAO had to follow an internal process as well as consult with headquarters based on mandates within the department. Thereafter, the

chain (Dkt. No. 350-1), which provides:

> USAO, April 12, 2024, at 3:50 p.m.: Per our conversation, I am inquiring on your availability to serve Deposition Subpoenas to witnesses on St. Croix. Please provide your fee per subpoena. I have attached U.S. Department of Justice-United States Attorney's Office Vendor Information Form (USAO Vendor Form) for your review and completion. Upon form completion, please email to me.
>
> The Juror, April 12, 2024 at 4:29 p.m.: Good afternoon! My fees are as follows: 75.00 (non rush/priority) 3 days or more to serve documents[.] 100.00-125.00 (priority) 2-3 days to serve documents[.] 150.00 and up (rush) same day service to 1 day to serve documents.
>
> USAO, April 12, 2024 at 4:33 p.m.: Good afternoon and thank you for your response. I am also reminding you to email the completed USAO Vendor Form at your earliest convenience.
>
> The Juror, April 12, 2024 at 5:32 p.m.: No problem [thumbs up].

*Id*. For purposes of the instant Motions, the Government stipulates that it knew of the April 12, 2024 communications prior to the Jury rendering its verdict, but did not disclose the communications at that time. The parties also stipulate that defense counsel was not advised of the communications with the Juror until after the jury returned its verdict.

On May 17, 2024, the Court held a post-trial conference ("First Conference") to address the Government's Notice. At the First Conference, Defendants requested that the Court hold an evidentiary hearing to permit questioning of the Juror and certain Government agents who were involved in, or aware of, the communications with the Juror. By Order entered on May 21, 2024, the Court scheduled an evidentiary hearing to permit limited questioning of the Juror because the Court determined that it should hear directly from the Juror on the matter. (Dkt. No. 353 at 3) ("[T]he Court is [] of the view that it should hear directly from the Juror as to the pertinent facts

---

Government's Notice was originally filed provisionally under seal on May 6, 2024. (Dkt. No. 342). In the filing, the Government referenced having orally disclosed the issue to defense counsel, but did not specify the date of that oral disclosure. *Id.* In his Motion, Defendant Bloice states that "the Government had advance[d] the issue to the defense on May 9, 2024." (Dkt. No. 364 at 1 n.1).

surrounding the communications."). However, the Court denied Defendants' request to the extent that they sought a more extensive hearing, including the questioning of individuals other than the Juror. *Id.* The Court found that "there is no evidence of a nonspeculative impropriety sufficient to justify questioning of individuals other than the Juror." *Id.* (internal quotation marks omitted); *see United States v. St. Lawrence*, 767 F. App'x 77, 82 (2d Cir. 2019). Accordingly, the Court scheduled another post-trial conference ("Second Conference"), to "allow inquiry of the Juror into the facts and circumstances surrounding the communications between the Juror and the USAO paralegal." (Dkt. No. 353 at 3).

At the Second Conference held on May 31, 2024, the Court questioned the Juror and then gave the parties an opportunity to question the Juror. After reviewing his cell phone records, the Juror testified that he did not have any communications with the USAO after April 12, 2024, and therefore had not communicated with the USAO during jury selection, the trial, jury deliberations, or thereafter. The Juror also testified that the only communications he had with the USAO in the days prior to the trial were the April 12, 2024 email correspondence, which was filed with the Court by the Government (Dkt. No. 350-1), and an earlier phone conversation referenced therein.[5] The Juror additionally testified that the rates he provided in the April 12, 2024 email correspondence were his standard rates; that the USAO paralegal did not get back to him about serving the subpoenas at any point after April 12, 2024; that he did not follow-up with the USAO

---

[5] The April 12, 2024 email correspondence references a prior "conversation." (Dkt. No. 350-1 at 2). During the Second Conference, the Juror testified that the "conversation" refers to a phone call between the Juror and the USAO paralegal. The Juror described the contents of the phone call as the USAO paralegal calling to inquire about the Juror's availability to serve subpoenas on the first weekend in May.

paralegal about serving the subpoenas at any point after April 12, 2024;[6] and that he did not receive the contract to serve the subpoenas referenced in the April 12, 2024 email chain.

While the Court did not find the facts testified to by the Juror at the Second Conference to establish a "nonspeculative impropriety," the Court inquired as to whether the pre-trial communications or prospect of doing business with the USAO had any influence on the Juror's deliberations or decision making. *See St. Lawrence*, 767 F. App'x at 82. The Juror testified that his jury deliberations and decision making in arriving at his verdict were not influenced by his April 12, 2024 communications or by the prospect of doing business with the USAO.

On June 10, 2024, Defendant Bryan filed his Motion for Mistrial. (Dkt. No. 359). In his Motion, Defendant Bryan argues that the Juror was impliedly biased due to the outstanding contract to serve the subpoenas. *Id.* at 1. Defendant Bryan additionally argues that he was entitled —but not given sufficient opportunity—to question the Juror regarding actual bias at the Second Conference. *Id.* Specifically, Defendant Bryan argues that he should have been permitted to question the juror about his role in the jury's deliberations.[7] *Id.* at 4.

---

[6] The Juror initially testified that he believed he completed and sent the Government a USAO Vendor Form, a blank version of which was attached to the April 12, 2024 email chain. The Juror later testified that he could not recall when he would have done so and would need to check his emails. After reviewing his emails, the Juror testified that his email records did not show that he had sent in the USAO Vendor Form to the Government.

[7] At the Second Conference, Defendants were permitted to question the Juror, but did not request, or attempt, to question the Juror about his role in the jury's deliberations. To the contrary, in the argument that followed the questioning of the Juror, Defendants argued only that they needed to question certain Government agents to establish the timeline of the Government's knowledge. The timeline issue was subsequently addressed by stipulation. However, at no point during the Second Conference at which the Juror was available for questioning did Defendants suggest that further questioning of the Juror was necessary. In any event, as discussed in Section III(A)(2) below, no further questioning of the Juror was warranted.

On June 14, 2024, Defendant Bloice filed his "Motion for Declaration of a Mistrial." (Dkt. No. 364). In his Motion, Defendant Bloice adopts the arguments raised in Defendant Bryan's Motion and further argues that the Government's "lack of transparency and candor" in "failing to disclose" the communications for two weeks constitute an independent basis for declaring a mistrial. *Id.* at 2. On June 17, 2024, Defendant Bryan filed a "Motion for Joinder," wherein he adopts the arguments raised in Defendant Bloice's Motion. (Dkt. No. 367).

On June 26, 2024, the Government filed its response to both Motions, arguing that the Juror was not actually or impliedly biased, and therefore, Defendants were not prejudiced by the Juror's presence on the Jury or by any delay in the Government's disclosure of the pre-trial communications. (Dkt. No. 369).

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Criminal Procedure 33(a) provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).[8] "Whether to grant a Rule 33 motion lies within the district court's sound discretion." *United States v. Kuntz*, 2020 U.S. Dist. LEXIS 207568, at *6 (D.V.I. Nov. 5, 2020) (quoting *United States v. Ortiz*, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000). It is the defendant's burden to establish that a new trial should be granted. *United States v. Saldana*,

---

[8] While Defendants style their Motions as Motions for a Mistrial, the Court finds that the Motions are properly considered as motions for a new trial pursuant to Federal Rule of Criminal Procedure 33 because a verdict has been returned and judgment has been entered. *See United States v. Hines,* 2023 WL 8007130, at *1 (E.D. Tenn. Nov. 17, 2023) (citing cases for proposition that post-verdict requests for mistrial are properly considered under Federal Rule of Criminal Procedure 33 which governs motions for new trials); *see also Sanders v. Ford*, No. 3:16-cv-02763, 2017 WL 3888492, at *8 (M.D. Tenn. Sept. 6, 2017) ("A mistrial is granted in a case in which the jury is discharged without a verdict; a motion for new trial is made after a judgment has been rendered.").

2010 U.S. Dist. LEXIS 79399, at *8 (D.V.I. Aug. 4, 2010), *aff'd*, 473 F. Appx. 118 (3d Cir. 2012)

("[T]he burden is on [the defendant] to show that his trial resulted in a miscarriage of justice.").

> ### A.     Juror Bias

"The Sixth Amendment guarantees every criminal defendant the right to a speedy and

public trial, by an impartial jury. The Due Process Clause of the Fifth Amendment complements

the Sixth Amendment's guarantee of trial by an impartial jury." *United States v. Berrios*, 2023

U.S. Dist. LEXIS 128002, at *30 (D.V.I. July 25, 2023) (internal citation and quotation omitted).

In seeking a new trial due to alleged juror bias, a criminal defendant can assert three different types

of claims:

> First is an implied bias claim, which arises in narrow circumstances when some
> characteristic about the juror requires that the Court impute bias as a matter of law. Second
> is an actual bias claim, which arises when the juror comes to court with some fixed set of
> beliefs or life experiences that prevents them from impartially deciding the case. Third is
> a *McDonough* claim, which essentially asks whether the juror was dishonest when
> answering a *voir dire* question and whether that juror would have been struck for cause had
> he answered honestly.

*United States v. Williams,* 2020 U.S. Dist. LEXIS 66023, at *15-16 (W.D. Pa. Apr. 15, 2020). The

Court "should undertake separate inquiries" for implied bias, actual bias, and a *McDonough*

challenge "even though some aspects of the three [] inquiries will overlap." *Id.* at *35.

> ### 1.     Implied Bias

"The doctrine of implied bias is rooted in the recognition that certain narrowly-drawn

classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite

their assurances to the contrary." *Berrios*, 2023 U.S. Dist. LEXIS 128002 at *31 (internal quotation

omitted). "[I]mplied bias is a limited doctrine, one reserved for exceptional circumstances." *United

States v. Harper*, 2014 U.S. Dist. LEXIS 101495, at* 30 (D.V.I. July 25, 2014) (citing *United

States v. Mitchell*, 690 F.3d 137, 147 (3d Cir. 2012)).  "Prudence dictates that courts considering

an implied bias claim should hesitate before formulating categories of relationships [that] bar

jurors from serving in certain types of trials." *Mitchell*, 690 F.3d at 149 (internal quotation and citation omitted).

A "juror [who] is an actual employee of the prosecuting agency is one example of an extreme situation[] that would justify a finding of implied bias." *Id.* at 151 (internal citation and quotation omitted). This category, however, has been very narrowly interpreted. *Id.* at 149-150 (declining to extend the presumption to employees of an investigating agency).  The extent of such narrow interpretation is exemplified in *Smith v. Phillips*, 455 U.S. 209 (1982), where the Supreme Court "declined to impute bias to a seated juror who, while the case in which he sat was being tried, applied for a job in the District Attorney's office in charge of the prosecution of the same case." *United States v. Torres*, 128 F.3d 38, 46 n.9 (2d Cir. 1997) (citing *Smith* 455 U.S. at 215-18).

### 2.  Actual Bias

"Traditionally, courts have distinguished between 'actual' and 'implied' biases of jurors." *Berrios*, 2023 U.S. Dist. LEXIS 128002, at *30 (citing *Mitchell*, 690 F.3d at 142). Actual bias is "bias in fact." *Mitchell*, 690 F.3d at 142. Actual bias requires evidence as to the "the mind of the individual juror" and showing of "actual partiality." *Williams*, 2020 U.S. Dist. LEXIS 66023 at *21. "All members of the venire are subject to examination for actual bias, which may become apparent when a venireperson admits partiality or may be inferred from responses to *voir dire* questioning." *Mitchell*, 690 F.3d at 142.

With respect to post-verdict inquiries into actual bias, "due respect must be accorded a fully litigated jury trial" and the Court should be "reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias[.]" *United States v. Noel*, 905 F.3d 258, 274 (3d Cir. 2018). In order to warrant a hearing on actual bias, "evidence of juror misconduct . . . must

constitute clear, strong, [and] substantial evidence of a specific, nonspeculative impropriety." *Id.* (citing *United States v. Claxton*, 766 F.3d 280, 301 (3d Cir. 2014)); *see also Mitchell*, 690 F.3d at 143 (quoting *Smith*, 455 U.S. at 217).

### 3. *McDonough* Claim

"The standard for granting a new trial as a result of a juror's false statements or omissions during *voir dire* comes from *McDonough Power Equip., Inc. v. Greenwood*." *Williams*, 2020 U.S. Dist. LEXIS 66023 at *23. "To obtain a new trial based on a juror's untruthful response to a *voir dire* inquiry, 'a party must first demonstrate that [the] juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *People of the V.I. v. Belardo*, 385 F. App'x 149, 153 (3d Cir. 2010) (quoting *McDonough*, 464 U.S. at 556); *see also United States v. Samuels*, 2023 U.S. Dist. LEXIS 183581, at *11-12 (D.V.I. Oct. 12, 2023) (the party seeking a new trial must "show that a correct response would have provided a valid basis for a challenge for cause").

As to the first requirement, "a juror's mistaken, though honest response at *voir dire* . . . will not invalidate a jury verdict." *Belardo*, 385 F. App'x at 153 (internal quotation and citation omitted); *Harper*, 2014 U.S. Dist. LEXIS 101495, at *24 (internal quotations omitted) ("*McDonough* plainly requires an affirmative dishonest statement on *voir dire* and defendants bear the burden of showing such dishonesty as a part of their allegation of bias."). Additionally, "when the substance of a juror's *voir dire* responses suggest a reasonable possibility that additional information would substantiate a potential conflict or bias, the defense has the responsibility to inquire further." *Noel*, 905 F.3d at 272-273.

As to the second requirement, defendants are not "entitled to relief based on an argument [that] they would have used a peremptory strike on [the juror] had they known" the truth. *United*

*States v. Browne*, 525 F. App'x 213, 215-216 (3d Cir. 2013). Rather, the moving party "must show that a truthful answer would have supported the Court's striking the juror for cause." *Harper*, 2014 U.S. Dist. LEXIS 101495, at *11 ("Absent these showings, a new trial is not in the interest of justice as required by Rule 33."). Actual and implied bias are "the primary bases for granting a challenge for cause." *Williams*, 2020 U.S. Dist. LEXIS 66023, at *27. However, "[s]eparate from actual and implied bias, courts may be required to grant for cause strikes based on a statute deeming the potential juror unfit or because of inferred bias from the juror's *voir dire* answers." *Id.* at *28, 36. (*McDonough* challenge "encompass[es] the wide discretion that the trial judge has when deciding a challenge for cause"). Ultimately, "the decision whether to grant a new trial or a hearing on that motion rests in the district court's discretion. *Noel*, 905 F.3d at 271.

### B.     Prosecutorial Misconduct

"Mere [prosecutorial] misconduct is not grounds for a reversal." *United States v. Mack*, 629 F. App'x 443, 445 (3d Cir. 2015). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith*, 455 U.S. at 219 ("[T]he aim of due process 'is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.'"). Thus, a prosecutor's failure to timely disclose facts requiring a post-trial hearing on juror bias does not, by itself, require a new trial. *Id.* at 221 ("Therefore, the prosecutors' failure to disclose Smith's job application, although requiring a post-trial hearing on juror bias, did not deprive respondent of the fair trial guaranteed by the Due Process Clause.").

### III.    DISCUSSION

#### A.    Juror Bias as a Basis for a New Trial

The Court concludes that Defendants have failed to establish juror bias under the circumstances here. Accordingly, a new trial is not warranted on that basis.

##### 1.    Implied Bias

Defendants argue that the Juror falls within the narrow category of individuals for whom bias is implied. Arguing, *inter alia*, that the Juror was a "self-employed process server who was *employed* by the Government" and who "needed to continue to be paid by the Government," Defendants maintain that "[t]he average person in the juror's position would expect his vote for guilt or acquittal to affect future government employment." (Dkt. No. 359 at 6) (emphasis added). Defendants conclude that the Juror was "impliedly biased based on his employment relationship with the Government." *Id.* at 8.  In making their argument, however, Defendants take great liberty in characterizing the facts of this case and rely on legal authority rejecting the application of implied bias to even a more extreme set of facts than is presently before the Court.  In short, Defendants have not identified any legal authority—and the Court has found none—supporting its proposition that implied bias applies to the facts of this case. Accordingly, the Court rejects Defendants' argument that the Juror was impliedly biased.

While an "actual employee of the prosecuting agency is . . .  an extreme situation[] that would justify a finding of implied bias," the implied bias doctrine, as discussed above, is very narrowly interpreted. *Mitchell*, 690 F.3d at 151. Despite Defendants' attempts to re-write the facts of this case,[9] the Juror here is *not* a USAO employee. To the contrary, the Juror is self-employed

---

[9] Throughout their Motion, Defendants claim, *inter alia*, that the Juror "failed to disclose his pending application for employment with the government during *voir dire*;" failed "to disclose his employment contract with the government;" and that the Juror "needed to continue to be paid by

and runs his own process serving agency. (Dkt. No. 363 at 33). While—as the Juror disclosed during *voir dire*—the USAO has contracted with the Juror to serve process on occasions, the Juror stated that he does not serve process for the USAO "on a regular basis." (Dkt. No. 362 at 22-23).[10] The fact that, prior to jury selection, the USAO had sought for the Juror to serve three subpoenas— and the Juror had quoted a fee of between $75.00 and $150.00 and up per subpoena[11]—does not transform the Juror from a self-employed business owner into an "actual employee of the prosecuting agency," *Mitchell*, 690 F.3d at 151, or otherwise bring the Juror within the ambit of the "narrowly-drawn classes of jurors [] highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary." *Berrios*, 2023 U.S. Dist. LEXIS 128002 at *31 (internal quotation omitted).

Defendants' reliance on *Smith*, which is factually and legally inapposite, is unavailing. *Id.* Indeed, the Supreme Court in *Smith* declined to apply implied bias to a much more extreme set of facts than those presently before the Court. *Torres*, 128 F.3d at 46, n.2 (citing *Smith*, 455 U.S. at 215-18) (explaining that the Supreme Court in *Smith* "declined to impute bias"); *Smith*, 455 U.S.

---

the government." (Dkt. No. 359 at 2, 3, 6). None of these factual allegations are supported by the record. First, the Juror did not apply for Government employment. Indeed, the Government—not the Juror—had requested that the Juror provide his fee to serve subpoenas. Further, the Juror did not fail to disclose an employment contract with the Government because he had none. Instead, the Juror disclosed that, as a self-employed process server, he contracted with the Government to serve subpoenas on an *ad hoc* basis. Moreover, while the Government and the Juror had discussed the possibility of the Juror serving subpoenas in the April 12, 2024 communications, these communications had not resulted in a contract—and certainly not in an employment contract. And finally, there is no information in the record to suggest that the Juror "needed to continue to be paid by the Government," as Defendants suggest. *Id.* at 6.

[10] The Juror's professional relationship with the USAO was unambiguously disclosed during *voir dire*. Defendants appeared unconcerned with the Juror's disclosed relationship with the USAO and declined to pose any questions to the Juror at sidebar.

[11] The Juror testified that these rates were his normal rates for service of process.

at 215 ("respondent argues [that] the law must impute bias to jurors in Smith's position. We disagree."). In *Smith*, "a sitting juror submitted an application for employment as an investigator for the district attorney's office responsible for trying the defendant's case." *Graciano v. Davis*, 2024 U.S. Dist. LEXIS 91625, *16-17 (D.N.J. May 21, 2024) (summarizing the facts of *Smith*); *see also Smith*, 455 U.S. at 228 (Marshall, J., dissenting) (noting the juror also "vigorously pursue[d] that employment throughout the course of the trial"). However, the Supreme Court in *Smith* declined to imply bias.

Thus, in *Smith*, the Supreme Court declined to impute bias to a juror who, 1) while the trial was going, 2) initiated communication with the prosecuting entity's office, 3) applied to be an actual employee of the prosecuting agency, and 4) vigorously pursued that employment opportunity during the trial. This case, in contrast, involves a juror who 1) did not initiate the pre-trial communications with the USAO, 2) did not seek to become an actual employee of the prosecuting agency, 3) did not communicate with the USAO at any point during the trial, and 4) and did not follow up on the USAO's pre-trial communications during or after the trial. Under these circumstances, the Court concludes that the case before it is not the type of "extreme situation" which suggests that the Court should imply bias. *Mitchell*, 690 F.3d at 151. Accordingly, the Court rejects Defendants' argument that this is a case of implied bias.

## 2. Actual Bias

Defendants concede that they have not established actual bias. Indeed, nothing on the face of the April 12, 2024 pre-trial communications suggests that the Juror was in fact biased against Defendants or in favor of the Government. At *voir dire*, the Juror disclosed having an *ad hoc* professional relationship with the USAO and stated that nothing about that professional relationship would "prevent [the Juror] from being fair and impartial to both sides." (Dkt. No. 362

at 23). There is nothing nefarious in the April 12, 2024 pre-trial email chain. Indeed, the email chain is merely an example of the *ad hoc* professional relationship with the USAO that the Juror disclosed during *voir dire*. Defendants do not argue otherwise.

Attempting nonetheless to breathe life into an argument for actual bias, Defendants argue that they were not permitted to "delve into the [J]uror's role during deliberations to prove actual bias" because of the Court's "[incomplete] inquiry at the [Second Conference] hearing." (Dkt. No. 359 at 1). Specifically, Defendants claim that they are entitled to a hearing wherein they can further question the Juror about "[h]is role in jury deliberations . . . [and] if the juror led others to convict Mr. Bryan on behalf of his employer" (Dkt. No. 359 at 4).[12] For this proposition, Defendants again rely on *Smith*. *Id.* at 2-3 (citing *Smith*, 455 U.S. at 213-217) ("[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). This reliance on *Smith*, however, is misplaced because Defendants have yet to identify juror misconduct constituting "clear, strong [and] substantial evidence of a specific, nonspeculative impropriety," which is a prerequisite for invading the sanctity of jury deliberations. *Noel*, 905 F.3d at 274.

In *Smith*, there was clear evidence of juror misconduct—namely, that the juror had applied and vigorously pursued employment within the district attorney's office *during the course of the trial*. *Smith*, 455 U.S. at 213 (noting that the trial judge had found that "Smith's letter was indeed an indiscretion"); *Smith*, 455 U.S. at 228 (Marshall, J., dissenting) ("there was evidence that juror Smith had a serious conflict of interest . . . [in that he] vigorously and actively pursue[d]

---

[12] As discussed above, the Juror did not seek actual employment with the USAO nor did he gain such employment. Therefore, the Court disagrees with the characterization that the USAO was the Juror's "employer."

employment in the prosecutor's office throughout the course of a trial"). Here, there is no such evidence of communications between the Juror and the USAO during the trial so as to suggest juror misconduct. To the contrary, Defendants' theory that the Juror "wanted to be on the jury and represent the interests of his employer by convicting [Defendants]" (Dkt. No. 359 at 3-4), is wholly unsupported and made unmistakably implausible by the record.

First, the Juror stated at sidebar during the jury *voir dire* that he wanted to be excused from the jury service in this matter due to the length of the proceeding. (Dkt. No. 363 at 32-33) ("The length of the case is the issue. If it was, like, maybe a two-day, maybe a three-day case, I could probably do it.").  The Juror's suggestion that he could not serve on the jury due to the length of the trial flatly contradicts Defendants' theory that the Juror "wanted to be on the jury," let alone that he wanted to be on the jury for some illicit purpose.[13] *Id.* at 3.  Second, the Juror's business relationship with the USAO was repeatedly and voluntarily disclosed during *voir dire*.[14] Third, and unlike the juror in *Smith*, the communications with the USAO were initiated by the Government—not the Juror, as some of Defendants' rhetoric suggests. *See* (Dkt. No. 359 at 8) (The Juror "sought additional work as recently as April 12, 2024."). Fourth, the Juror voluntarily offered—and provided—additional evidence at the Second Conference in the form of his phone

---

[13] Nor does the jury verdict support Defendants' theory. The Court notes that the Jury unanimously acquitted Defendants on the primary charge in Count I, which does not square easily with Defendants' narrative that the Juror voted based on a desire to win the Government's favor. *See Neng Saypao Pha v. Swarthout*, 2015 U.S. Dist. LEXIS 51792, at *24 (E.D. Cal. Apr. 20, 2015) ("[T]he fact that there was a unanimous acquittal of one count of spousal abuse, i.e., the affected juror voted in favor of the defendant, simply does not square with the picture of a juror so biased by the facts of her own case, that her emotional state demonstrated implied bias[.]").

[14] To the extent that Defendants argue that the Court should draw inferences from the Juror's non-disclosure of the April 12, 2024 email correspondence, the Court will address that argument under *McDonough*.

records. (Dkt. No. 356 at 2). Fifth, and mostly critically, the Juror never followed up with the Government—either during or after the trial—regarding serving the three subpoenas or otherwise requesting future employment opportunities from the Government.

Accordingly, there is no evidence of a "specific, nonspeculative impropriety" to justify Defendants' request for a full evidentiary hearing to inquire into the details of jury deliberations. *Noel*, 905 F.3d at 274. Such a hearing would simply be an impermissible and unwarranted fishing expedition for actual bias. *Id.* Accordingly, Defendants' contention that they should have been allowed to "delve into the [J]uror's role during deliberations to prove actual bias" (Dkt. No. 359 at 1) is wholly devoid of merit.

### 3. *McDonough* Challenge

Defendants argue that they are entitled to a new trial based on the juror's "failure to disclose" the April 12, 2024 communications. This challenge falls under *McDonough*. *Williams*, 2020 U.S. Dist. LEXIS 66023, at *23.

Under *McDonough,* Defendants must first demonstrate that a Juror was intentionally untruthful. *See id.* at *24 (the "first prong requires some level of intent behind the juror's misstatement or omission"); *Harper*, 2014 U.S. Dist. LEXIS 101495, at *24 ("*McDonough* plainly requires an affirmative dishonest statement on *voir dire*[.]"); *United States v. Harmon*, 21 F. Supp. 3d 1042, 1058 (N.D. Cal. 2015) (Defendants "must show that [the Juror's] answers were intentionally untruthful" and "no juror bias [will be found] when omissions on *voir dire* were inadvertent, not intentional") (citing *Hamilton v. Ayers*, 583 F.3d 1100, 1107 (9th Cir. 2009)). In the context of an intentional misstatement, *McDonough* then requires that Defendants show "that a [complete] response would have provided a valid basis for a challenge for cause.'" *Belardo*, 385 F. App'x at 153.

Defendants characterize the Juror's responses to *voir dire* questions as falsely revealing only that the Juror "had done work for the government in the past." (Dkt. No. 359 at 3). The Juror, however, never stated in any terms or otherwise suggested that his business relationship with the USAO was only a past business relationship. To the contrary, the Juror disclosed, unequivocally and in the present tense, that: "I'm the owner of [Company]. I provide process serving, investigative work and courier service;" "I serve some documents for the U.S. Attorney's Office;" and "I do have a professional relationship with the U.S. Attorney's Office as a process server." (Dkt. Nos. 362 at 20-21; 363 at 33). The Court also inquired of the Juror in the present tense: "[s]o you do process serving for the United States Attorney's Office. . .?" The Juror responded: "I have, but not on a regular basis."[15] (Dkt. No. 362 at 22-23). In light of the responses from the Juror, Defendants have failed to establish either prong under *McDonough* so as to warrant a new trial.

First, Defendants have failed to meet the first prong under *McDonough*—that the juror gave an intentionally untruthful answer during *voir dire*. Indeed, Defendants are hard-pressed to identify any falsity in the Juror's responses, much less any intentional falsity.[16] Similarly, there is

---

[15] To the extent that Defendants are suggesting that the last response cited—"I have, but not on a regular basis" (Dkt. No. 362 at 22-23)—should be interpreted as the Juror conveying that his professional relationship with the USAO was only in the past, such a suggestion is fanciful. In response to the Court's question, the Juror was obviously confirming that he in fact does process serving for the USAO, but not on a regular basis. This interpretation of the Juror's response is confirmed when read in the context of all of the Juror's responses.

[16] The Court views the April 12, 2024 email chain as consistent with the Juror's description of his work for the USAO as occurring "not on a regular basis." (Dkt. No. 362 at 22-23). Specifically, it is apparent from the April 12, 2024 email chain, wherein a paralegal in the St. Thomas office requests the Juror's rates for serving process, that the Juror and the Government did not have an established rate for process serving, or at least not one that was known throughout the USAO. Further, the April 12, 2024 email chain itself contained only a discrete request by the Government to serve three specific subpoenas in a particular civil matter. This is a far cry from the employment relationship that Defendants seek to paint between the Juror and the USAO. To the contrary, the April 12, 2024 email chain is entirely consistent with the Juror's disclosure of an *ad hoc* professional relationship with the USAO.

no indication here that the Juror intentionally omitted mention of the April 12, 2024 communications during *voir dire* or did so for some improper reason, as Defendants claim. The Juror was not asked any question that called for the disclosure of the April 12, 2024 communications. Moreover, any notion that the Juror intentionally omitted the April 12, 2024 communications in hopes of using his jury service in this matter to gain favor with the Government is undercut given that the Juror repeatedly disclosed his business relationship with the USAO, never pursued the opportunity to serve the three subpoenas discussed in the April 12, 2024 communications, and sought to be excused from jury service for an unrelated reason.

Further, in response to the Court's questions, the Juror presented for the Court's and the parties' consideration the prospect of any conflict that the Court or the parties believed would prevent him from being fair and impartial based on his *ad hoc* professional relationship with the USAO as a process server. As the Third Circuit noted in *Noel*, "when the substance of a juror's *voir dire* responses suggests a reasonable possibility that additional information would substantiate a potential conflict or bias, the defense has the responsibility to inquire further." *Noel*, 905 F.3d at 272-273. It is undisputed that, at sidebar, counsel for Defendants were given the opportunity to further question the Juror, and they declined to do so.[17] Accordingly, in light of Defendants' failure to inquire further into any potential conflict during jury *voir dire*, they should not now be heard to complain about a purportedly incomplete response by the Juror. *See, e.g.*, *Noel*, 905 F.3d at 273 n.8 (quoting *Billings v. Polk*, 441 F.3d 238, 246 (4th Cir. 2006)) ("[D]efendants may not 'sandbag the courts by accepting jurors onto the panel without exploring on *voir dire* their possible sources

---

[17] Indeed, if Defendants were even remotely concerned about the professional relationship between the Juror and the USAO, they could easily have inquired of the Juror as to his most recent contact with the USAO in his professional capacity as a process server. While the reason for Defendants' silence in this regard is unknown, the Court notes that the Juror also disclosed having a personal and professional relationship with Defendant Bryan.

of bias and then, if their gambit failed and they were convicted, challenging their convictions by means of post-trial evidentiary hearings based on newly discovered evidence of possible juror bias.'").

Defendants have also failed to meet the second prong under *McDonough* —a showing that, had the Juror mentioned the April 12, 2024 communication, there would have been a valid basis to excuse the Juror for cause at that time. *Samuels*, 2023 U.S. Dist. LEXIS 183581, at *11-12 (the party seeking a new trial must "show that a correct response would have provided a valid basis for a challenge for cause."). Defendants contend that the Juror intentionally failed to disclose the April 12, 2024 communications. Under the second prong of *McDonough*, the Court thus examines whether disclosure of those communications "would have provided a valid basis for a challenge for cause." *Id.* The Court does not so find.

Implied bias and actual bias are "the primary bases for granting a challenge for cause." *Williams*, 2020 U.S. Dist. LEXIS 66023 at *27. As the Court has already found, the Juror's professional relationship with the USAO does not constitute such an "extreme circumstance" justifying the application of implied bias. *Mitchell*, 690 F.3d at 151.  Further, as the Court also discussed in detail above, the Juror's disclosure of the April 12, 2024 communications would not have warranted the Juror's dismissal due to actual bias because nothing in the April 12, 2024 communications indicate that the Juror was "in fact" biased against Defendants. *Id.* at 142. Defendants have not articulated another basis for a "for cause" challenge. Accordingly, Defendants have failed to satisfy the second prong of *McDonough*.

In view of the foregoing, a new trial is not warranted under *McDonough*.

### B.    Prosecutorial Misconduct as a Basis for a New Trial

Defendants argue that—independent of prejudice to Defendants—prosecutorial misconduct in delaying the disclosure of the Juror's April 12, 2024 pre-trial communications warrants granting Defendants a new trial. Defendants identify no legal authority supporting this view, which is expressly contrary to the law articulated by the Supreme Court in *Smith*. *Mack*, 629 F. App'x at 445 ("Mere [prosecutorial] misconduct is not grounds for a reversal.") (citing *Smith*, 455 U.S. at 219). Rather, the touchstone of the alleged prosecutorial misconduct is whether Defendants have been deprived of a fair trial. *Smith*, 455 U.S. at 219. Defendants, however, have failed to make this showing.

The Court finds that the Government's alleged delay in disclosing the April 12, 2024 communications did not undermine the fairness of the trial. Defendants claim that, had they learned of the April 12, 2024 communications prior to the jury rendering its verdict, they would have sought to remove the Juror. (Dkt. No. 364 at 11) ("By its own choosing, the United States took away from the defense and the Court the opportunity to address the issue while still at trial . . . . If the government had been candid with the Court and the parties, Mr. Bryan [and Mr. Bloice] could have sought to replace the juror with an alternate so he could receive a fair trial."). As the Court has already discussed at length, however, the April 12, 2024 communications do not provide a basis to remove the Juror for cause; the April 12, 2024 communications are consistent with the *ad hoc* professional relationship that the Juror voluntarily disclosed; no communications between the USAO and the Juror occurred during or after the trial; and the April 12, 2024 communications themselves do not establish that the Juror is impliedly or actually biased such that removal would have been appropriate. *Williams*, 2020 U.S. Dist. LEXIS 66023 at *27. Accordingly, there is no

evidence that Defendants were deprived of a fair trial so as to warrant a new trial based on alleged prosecutorial misconduct.

## IV.    CONCLUSION

In view of the foregoing, the Court will grant Defendant Bryan's Motion for Joinder (Dkt. No. 367) and deny Defendants' Motions for Mistrial (Dkt. Nos. 359, 364). Defendants have not established that the Juror was impliedly or actually biased, or that the Juror was intentionally untruthful during *voir dire* such that Defendants were denied a right to a fair trial by an impartial jury.  For the same reasons, the alleged prosecutorial misconduct does not warrant a new trial because Defendants were not prejudiced by any alleged delay in the Government's disclosure of the April 12, 2024 communications. Additionally, Defendants have not established a basis for conducting further examination into the Juror's role during the jury's deliberations. Accordingly, the Court will deny Defendants' Motions for Mistrial.

An appropriate Order accompanies this Memorandum Opinion.

Date:   August 11, 2024                              _____/s/_____
                                                     WILMA A. LEWIS
                                                     District Judge